UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTELA V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-5516 |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Estela V.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The Parties have filed cross motions for summary judgment.[2] For the reasons detailed below, the Commissioner's Motion for Summary Judgment (dkt. 23) is denied and Plaintiff's motion (dkt. 20) is granted. The case is remanded for further proceedings consistent with this opinion.

On May 19, 2017, Plaintiff filed her claim for disability insurance benefits with an alleged onset date of April 19, 2017. (Administrative Record ("R.") R. 18.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) The hearing was held on November 1, 2018. (*Id.*) On September 4, 2019, ALJ Lana Johnson denied Plaintiff's claim, finding her not disabled under the Act and therefore ineligible for benefits. (R. 18-27.) The Appeals Council denied Plaintiff's request for review on July 20, 2020, (R. 1-7), leaving the ALJ's decision as the final decision of the Commissioner, reviewable

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 20), which the Court construes as a motion for summary judgment.

by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's decision followed the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 19, 2017, through her date last insured ("DLI") of December 31, 2017. (R. 20.) At step two, the ALJ concluded that Plaintiff had the severe impairments of bilateral rotator cuff tears status-post bilateral repairs and degenerative disc disease of the cervical and lumbosacral spines. (*Id.*) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 22.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions: occasional crawling or climbing ladders, ropes, or scaffolds; frequent pushing and pulling with the upper extremities; occasional reaching overhead with the upper extremities; and frequent reaching in all other directions with the upper extremities. (R. 22-23.) At step four, the ALJ concluded Plaintiff was unable to perform her past relevant work. (R. 26.) At step five, the ALJ found that other jobs in the national economy exist that Plaintiff can perform, considering her age, education, work experience, and RFC, including housekeeping cleaner, price marker, and cafeteria attendant. (R. 27.) These findings led to the conclusion that Plaintiff is not disabled as defined by the Social Security Act. (R. 27.)

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

Plaintiff has had three major medical interventions, only one of which is pertinent to this opinion. First, on August 12, 2016, Plaintiff had a right shoulder arthroscopy with extensive debridement and rotator cuff repair. (R. 316.) Approximately one year later, she reported "doing better" with "very good range of motion, except in external rotation." (R. 374.) Second, Plaintiff had an emergency discectomy with the placement of one moveable disc prosthesis to repair a herniated disc at the C5-C6 level in March 2018. (R. 725.) Her surgeon noted "[m]arked clinical improvement…during the post-operative period." (*Id.*) Imaging of her cervical and lumbar spine in June 2018 showed post-surgical changes, but not much else of clinical significance. (R. 670-671.) Finally, and most relevant to this case, on January 15, 2018, Plaintiff had a left shoulder arthroscopy with subacromial decompression, rotator cuff repair, and labral repair.[3] (R. 633.) Unfortunately, the record does not have much information about Plaintiff's recovery from the surgery on her left

---

[3] The Court recognizes this surgery took place after Plaintiff's DLI. However, the ALJ found Plaintiff had the severe impairment of *bilateral* rotator cuff tears, so the surgery and accompanying recovery would be relevant to the nature and extent of her impairment during the relevant time period.

3

shoulder. On April 26, 2018,[4] Plaintiff's treating surgeon, Dr. Luis Carrilero, M.D., opined that Plaintiff could never lift less than 10 pounds, and never push or pull with her upper extremities. (R. 546.) He noted that "at this time the patient is not able to perform any kind of activity with her left arm," and she needed to continue with strict immobilization and be re-evaluated in four weeks. (R. 547.)

The ALJ's discussion of the Plaintiff's left shoulder impairment is sparse. Regarding Plaintiff's surgical procedures, the ALJ wrote:

> [W]hile the claimant has residual pain complaints, within reasonable recovery periods of each procedure, each of less than 12 months, clinical examination showed significant improvement. For example, within two months of the cervical procedure, the claimant reported that her symptoms went away. Furthermore, more recent imaging showed only small, minimal, or mild cervical and lumbosacral issues, and the most recent clinical findings noted no strength (sic) range of movement, gait, or sensation deficits.

(R. 24.)

Notably, the ALJ did not cite any evidence in the record to support her statement that Plaintiff recovered from all her surgical procedures within 12 months; she did not mention the left shoulder recovery at all and only cited Plaintiff's neck surgery as an example. The closest the ALJ came to discussing Plaintiff's recovery from her left shoulder surgery is the paragraph preceding the quote above, where she found: "[i]n September 2018, Dr. Palu-Ay observed normal tone and motor strength, no malalignment, tenderness or bony abnormalities, normal movement of all extremities, no edema or palpable cord, normal gait and station, and grossly intact sensation." (*Id.*) The ALJ did discuss Dr. Carrilero's opinion, but concluded it was "not persuasive as it was only a temporary assessment and not a statement of ongoing functional ability." (R. 25.) The ALJ then cited the same September 2018

---

[4] The date of this document is unclear. The ALJ found it was created 10 days after Plaintiff's surgery, and the barely legible writing does appear to say "patient underwent surgery 10 days ago a left shoulder rotator cuff repair." (R. 25, 547.) However, the date appears to say "4/26/28" and the table of contents for the Administrative Record records the date as April 26, 2018. (R. 547; Dkt 19-1 at 4.)

4

note from Dr. Palu-Ay to show that "by September 2018, examination was generally normal." (*Id.*) That is the entirety of the evidence cited by the ALJ to reach her conclusions regarding Plaintiff's left shoulder impairment and its effect on her RFC. None of the other medical opinions in the record considered Plaintiff's left shoulder condition at all: the state agency consultants' opinions predate the left shoulder surgery and the medical expert who testified at the administrative hearing did not consider any evidence related to the left shoulder condition. (*Id.*)

The ALJ's RFC conclusion is not supported by substantial evidence. In particular, the ALJ's findings that Plaintiff could push and pull frequently with both arms, occasionally reach over head with both arms, and frequently reach in all other directions with both arms are not substantiated by the evidence the ALJ cited. There is virtually no evidence in the record regarding Plaintiff's functionality following her left shoulder surgery, so the Court cannot find that the limitations relating to Plaintiff's left upper extremity are supported by substantial evidence in the record. The only evidence the ALJ relied on was the September 2018 note from Dr. Palu-Ay. However, a review of that note shows Plaintiff presented on that date complaining of stomach pain, and there was no meaningful examination of Plaintiff's left shoulder. (R. 396-400.) Moreover, the section of the document the ALJ cited is a rote recitation of all potential symptoms and does not appear to reflect any consideration of Plaintiff's actual condition; it says she has "no abdominal pain" despite her chief complaint that day being stomach pain and the preceding section stating "upper abdominal pain x 2 weeks, seen in ER x3." (R. 399.) In fact, a review of the corresponding section in other notes from the same provider reveals that they do not constitute a reliable recitation of Plaintiff's symptoms. For example, at the pre-operative visits for both of her shoulder surgeries, the records claim Plaintiff had "no pain," and "normal movement of all extremities." (R. 462, 476.) In short, the ALJ cited one unreliable section of a note from a visit for an unrelated medical issue as proof that Plaintiff had sufficiently recovered from her left shoulder surgery, which the Court does not believe qualifies as

substantial evidence.[5] Without more, the Court cannot affirm the ALJ's decision and must remand the case for a more robust examination and consideration of Plaintiff's impairments on her RFC.

Here, the ALJ found that Plaintiff suffered from the severe impairment of "bilateral rotator cuff tears status-post bilateral repairs." As such, the ALJ was required to determine how that severe impairment affected Plaintiff's RFC. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [claimant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of this entire constellation of ailments–including those impairments that in isolation are not severe.") The ALJ found that Plaintiff was able to push and pull frequently with both arms, occasionally reach over head with both arms, and frequently reach in all other directions with both arms despite her left rotator cuff tear and surgical repair. To support that finding, she needed to cite to substantial evidence in the record. As noted above, she failed to do so, and the Court must remand for further proceedings.

The Commissioner's Motion for Summary Judgment (dkt. 23) is denied and Plaintiff's motion (dkt. 20) is granted. The case is remanded for further proceedings consistent with this opinion.

Entered: April 19, 2022

Susan E. Cox,
United States Magistrate Judge

---

[5] To the extent there was any evidence regarding Plaintiff's recovery from her left should surgery, it was Dr. Carrilero's opinion. The Court finds some issues in the ALJ's treatment of that opinion as well. First, the ALJ rejected the opinion because it was "only a temporary assessment," but there is no express indication Dr. Carrilero intended his opinion to be temporary. More importantly, the ALJ did not consider whether Dr. Carrilero's opinion was consistent or supportable, which "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2). The Social Security Regulations require that an ALJ "explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).